UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELLE ESTHER CARRICK,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., et al.,<br><br>Defendants. | Case No. 24-cv-00212-PCP<br><br>**ORDER GRANTING MOTION TO REMAND IN PART**<br><br>Re: Dkt. No. 9 |

Plaintiff Gabrielle Carrick filed this lawsuit in California state court against her former employer Peloton Interactive, Inc. and Peloton managers Sharon Fox and Martha Murphy. Peloton timely removed the case to this Court. Carrick now moves to remand under 28 U.S.C. § 1447(c). For the reasons that follow, the Court grants in part Carrick's motion.

## BACKGROUND

Carrick, formerly a sales specialist at Peloton, alleges that she endured harassment and discrimination from her store manager Sharon Fox from 2021 until her resignation in July 2022. Carrick's role entailed guiding visitors through Peloton's product portfolio and assisting customers in finding the right product. Carrick alleges that Fox persistently made inappropriate comments about her dating and sex life and made derogatory remarks about her sexual orientation. After Carrick reported Fox's behavior to HR and regional manager Martha Murphy, Fox purportedly "began scheduling Plaintiff for all closing shifts, did not provide rest breaks, caused her to work overtime without sufficient compensation and treated her differently from other employees." Dkt. No. 1-1, at 11. Carrick also alleges that she was required to use her personal vehicle for work-related purposes and purchase Peloton-branded clothing for work without reimbursement. Due to anxiety resulting from Fox's continuing harassment, Carrick purportedly resigned in July 2022.

Carrick asserts twelve claims against Peloton under California labor law and one under federal law: (1) failure to pay overtime in violation of California law; (2) failure to pay for rest periods not provided in violation of California law; (3) failure to pay for meal periods not provided in violation of California law; (4) inaccurate wage statements in violation of California law; (5) failure to pay minimum wage in violation of California law; (6) waiting time penalties under California law; (7) sexual orientation discrimination under California's Fair Employment and Housing Act (FEHA); (8) failure to prevent discrimination under FEHA; (9) sexual harassment under FEHA; (10) intentional infliction of emotional distress in violation of California law; (11) failure to reimburse employees for required business expenses in violation of California law; (12) unfair competition under California's Unfair Competition Law (UCL); and (13) violation of the Fair Labor Standards Act (FLSA). The ninth and tenth claims for sexual harassment and intentional infliction of emotional distress are also asserted against Fox and Murphy.[1]

Peloton removed the case to federal court in January 2024 under 28 U.S.C. § 1441(a). Carrick now moves to remand the lawsuit back to California state court.

## LEGAL STANDARDS

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir. 1988). Because this civil action was removed to federal court by Peloton, it bears the burden of establishing this Court's subject matter jurisdiction.

The two primary sources of subject matter jurisdiction are diversity jurisdiction and federal question jurisdiction. Diversity jurisdiction permits individuals to bring claims in federal court when the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Federal question jurisdiction permits a claim to proceed in federal court if it

---

[1] Peloton argues that defendants Fox and Murphy have not been timely served. Dkt. No. 1, at 14. Because the Court grants the motion to remand claims 7–10, it need not address that issue at this time.

2

arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A federal court can also possess supplemental jurisdiction over a state law claim if it is part of the "same case or controversy under Article III" as a federal law claim. 28 U.S.C. § 1367(a). For a court to exercise such supplemental jurisdiction, the "state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

In attempting to establish or attack subject matter jurisdiction, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "When the plaintiffs' motion to remand raises a factual challenge by contesting the truth of the remover's factual allegations … the remover must support her jurisdictional allegations with competent proof … under the same evidentiary standard that governs in the summary judgment context." *DeFiore v. SOC LLC*, 85 F.4th 546, 552–53 (9th Cir. 2023).

## ANALYSIS

### I. The Court Has Subject Matter Jurisdiction Over Claims 1–6 and 11–13.

The parties agree that this Court has federal question jurisdiction over Carrick's thirteenth claim under the FLSA because it arises under federal law. *See* 28 U.S.C. § 1331. Because this Court has jurisdiction over that claim, Carrick's motion is denied to the extent she seeks remand of her FLSA claim.

Peloton argues that the Court has supplemental jurisdiction over the remaining twelve state law claims because all "thirteen causes of action allege and rely upon the same—or, at a minimum, overlapping—factual allegations." Dkt. No. 1, at 17. Carrick responds that the connection between the federal FLSA claim and the state law claims is "tenuous." Dkt. No. 12, at 14. Confusingly, however, she admits that "the connection is probably sufficient for the court to exercise supplemental jurisdiction" over claims 1–6 and 11–12. *Id.* As to claims 7–10 alleging discrimination, harassment, and intentional infliction of emotional distress, Carrick maintains that they do not form part of the same "case or controversy" as her federal FLSA claim and the Court therefore cannot exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(a). And even if they do form the same "case or controversy," Carrick argues, the Court should exercise its

3

discretion to decline jurisdiction over them because the state law issues therein "predominate" over the federal FLSA claim. 28 U.S.C. § 1367(c)(2) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.").

As Carrick implicitly concedes, the Court has supplemental jurisdiction over claims 1–6 and 11–12 because they share "a common nucleus of operative fact" with the federal FLSA claim. *Gibbs*, 383 U.S. at 725. In Carrick's federal FLSA claim, she alleges that Peloton failed to pay her overtime wages and "maintained a policy or practice of not paying overtime wages to hourly employees." Dkt. No. 1-1, at 22. Claims 1–3 similarly allege that Peloton failed to pay Carrick wages for work done overtime and during rest or meal periods not provided. And claims 4–6, relating to Peloton's purported failure to maintain accurate wage statements and pay employees a minimum wage in a timely manner, stem directly from the conduct alleged in claims 1–3. Claim 11 for failure to reimburse business expenses also concerns Peloton's alleged failure to make necessary payments to its employees. Finally, claim 12 alleging unfair competition in violation of the UCL relies upon the predicate violations alleged in claims 1–6. In short, the Court may exercise supplemental jurisdiction over claims 1–6 and 11–12 because they are part of the same case or controversy as the federal FLSA claim.

Claims 7–10, which allege sexual orientation discrimination, failure to prevent discrimination, sexual harassment, and intentional infliction of emotional distress, are different. These claims center on allegedly inappropriate conduct by Carrick's store manager Fox and regional manager Murphy's purported failure to stop this conduct, rather than on Peloton's alleged failure to make required wage payments to Carrick. Because the factual allegations underlying the discrimination, harassment, and intentional infliction of emotional distress claims are not part of the same case or controversy as those underlying the wage-related claims, the Court cannot exercise supplemental jurisdiction over them. *See, e.g.*, *Thomas v. EONY LLC*, 2015 WL 1809085, at *6 (S.D.N.Y. Apr. 21, 2015) (holding that "sexual harassment, disability discrimination, and tort claims [that] involve significantly different sets of facts from the wage and hour claims" are not part of the same case or controversy).

4

**II.     The Court Lacks Subject Matter Jurisdiction Over Claims 7–10.**

Without federal question or supplemental jurisdiction over claims 7–10, the Court can only hear them if diversity jurisdiction exists as to those claims. Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity, meaning that all persons or associations on one side of the controversy (i.e., all plaintiffs) are citizens of different states from all persons or associations on the other side (i.e., all defendants). *Strawbridge v. Curtiss*, 7 U.S. 267 (1806). A corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business—the corporation's "nerve center." *See Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010).

Carrick argues that the parties are not completely diverse. Though she is a California citizen and Peloton is a citizen of both Delaware (its place of incorporation) and New York (its principal place of business), individual defendants Fox and Murphy are both California residents.

Peloton responds that Fox and Murphy's California citizenship cannot destroy diversity because neither was properly joined to the lawsuit and served with the complaint prior to removal. But Peloton's argument that it can remove the case notwithstanding the lack of diversity between Carrick, Fox, and Murphy because Fox and Murphy were not properly joined and served prior to removal misunderstands the relevant law. Peloton terms its approach "snap removal" and cites 28 U.S.C. § 1441(b)(2), which provides that a case cannot be removed "if any of the parties in interest *properly joined and served* as defendants" is a citizen of the forum state (emphasis added). But even if snap removal were available, *but see Casola v. Dexcom, Inc.*, 98 F.4th 947, 964 n.17 (9th Cir. 2024) (noting that "[d]istrict courts in circuits like ours that have not decided the permissibility of snap removal are divided on the matter."), it still requires complete diversity between the parties.[2] That Fox and Murphy were not properly served has no bearing on whether Peloton can remove the case because Fox and Murphy, like Carrick, are California citizens. *See Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969) ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is

---

[2] Rather than modifying the requirements of 28 U.S.C. § 1332, the "snap removal" theory simply permits defendants to remove cases in which complete diversity exists but the forum-defendant rule in 28 U.S.C. § 1441(b)(2) would bar removal but for the fact that the forum defendant has not yet been "properly joined and served."

determined from the fact of citizenship of the parties named and not from the fact of service."); *see also Golden v. Microsoft Corp.*, 2024 WL 1354565, at *3 n.3 (N.D. Cal. Mar. 29, 2024) (noting that the Ninth Circuit has rejected the view that a court "may ignore the citizenship of the unserved individual defendants in evaluating whether complete diversity exists").

Peloton separately argues that Fox and Murphy's citizenship should be disregarded because they are fraudulently joined sham defendants who cannot be found liable as a matter of law. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."). Peloton contends that the sexual harassment, discrimination, and intentional infliction of emotional distress claims fail as a matter of law because the managerial privilege precludes individual liability for tort claims arising from the scope of employment; the alleged conduct was neither extreme and outrageous nor severe and pervasive; and the requested damages are preempted by the California Workers' Compensation Act.

Peloton's second argument also misses the mark. Peloton misstates the standard that courts must use when assessing claims against alleged sham defendants. While Peloton argues that the Court should assess the sexual harassment, discrimination, and intentional infliction of emotional distress claims under a Rule 12(b)(6) plausibility standard, courts in the Ninth Circuit have only found defendants to be "sham" defendants whose citizenship can be ignored when "it is abundantly obvious that [a plaintiff] could not possibly prevail." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001). "[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018). As a result, "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *Id.* at 549.

Applying the appropriate standard, Carrick sufficiently pleads state law claims against Fox and Murphy. Under a 2000 amendment to FEHA, an "employee of an entity subject to [FEHA] is personally liable for any harassment prohibited by this section that is perpetrated by the employee,

1  regardless of whether the employer or covered entity knows or should have known of the conduct
2  and fails to take immediate and appropriate corrective action." Cal. Gov't Code § 12940(j)(3).
3  Contrary to Peloton's argument, the managerial privilege that might apply to *common law* tort
4  claims does not preclude individual liability for *statutory* tort claims such as those brought under
5  FEHA. *Golden*, 2024 WL 1354565, at *5 (noting that the California decisions recognizing a form
6  of managerial immunity "did not purport to limit statutory causes of action, including those
7  brought pursuant to FEHA").

8  While Peloton argues that Fox and Murphy's conduct was not sufficiently extreme to plead
9  intentional infliction of emotional distress, there is at least a "possibility that a state court would
10 find that the complaint states [this] cause of action" based on the facts pleaded. *Grancare*, 889
11 F.3d at 548. After all, Carrick alleges that sexual orientation discrimination and harassment at
12 work resulted in "severe, serious and permanent injuries" to her mental health. Dkt. No. 1-1, at 19.
13 "[T]here is [thus] a non-fanciful possibility that [she] can state a claim under California law [for
14 intentional infliction of emotional distress] against the non-diverse defendants." *Macey v. Allstate*
15 *Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).

16 It also is not "abundantly obvious" that Carrick's claims are preempted by the California
17 Workers' Compensation Act. *Morris*, 236 F.3d at 1068. The purportedly inappropriate conduct
18 here appears to be outside the normal scope of employment because the factual allegations suggest
19 that such discrimination and harassment was not generally condoned by Peloton, Dkt. No. 16, at
20 6–7, and the Workers' Compensation Act may not preclude the claims for harassment,
21 discrimination, and intentional infliction of emotional distress arising from conduct outside the
22 scope of a legitimate employment relationship. *See, e.g.*, *Hart v. National Mortgage & Land Co.*,
23 189 Cal. App. 3d 1420, 1430 (1987) (holding that plaintiff could seek tort claim against employer
24 because his co-worker's purported sexual harassment had "a questionable relationship to" and was
25 "neither a risk, an incident, nor a normal part of" his employment).

26 At a minimum, any "deficiency in the complaint can possibly be cured by granting the
27 plaintiff leave to amend," precluding this Court from finding that Fox and Murphy are sham
28 defendants. *Grancare*, 889 F.3d at 550.

7

Because it is not "abundantly obvious" that Carrick will not be able to prevail against Fox and Murphy, Fox and Murphy were not fraudulently joined in a manner that would permit the Court to disregard their citizenship. *Morris*, 236 F.3d at 1068. And because they are non-diverse with Carrick, the Court lacks diversity jurisdiction over claims 7–10.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to remand as to claims 7–10 but denies the motion as to claims 1–6 and 11–13.

**IT IS SO ORDERED.**

Dated: July 10, 2024

P. Casey Pitts
United States District Judge